IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPECIALTYCARE INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, | |
| Plaintiffs, | C.A. No. 25-198-MN |
| v. | FILED |
| MERITAIN HEALTH, INC., | FEB - 9 2026 |
| Defendant. | U.S. DISTRICT COURT DISTRICT OF DELAWARE |

## REPORT AND RECOMMENDATION

Plaintiffs SpecialtyCare Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "Plaintiffs") bring this action to confirm Independent Dispute Resolution (IDR) awards under the No Surprises Act (NSA), 42 U.S.C. §§ 300gg-111 *et seq.* (D.I. 15). Defendant Meritain Health, Inc. ("Meritain") has moved to dismiss Plaintiffs' First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (D.I. 19), and it also moves to stay this action pending resolution of the motion to dismiss (D.I. 25). These motions were referred to me on October 8, 2025. (D.I. 34). For the following reasons, I recommend granting Meritain's motion to dismiss and denying as moot Meritain's motion to stay.

## I. BACKGROUND

Congress enacted the NSA "to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network healthcare providers." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025) (citing 42 U.S.C. §§ 300gg-111, 300gg-112)); *see also generally Avraham Plastic Surgery LLC v. Aetna, Inc.*, No. 25-

784 (OEM) (SDE), 2025 WL 3779084, at *1–2 (E.D.N.Y. Dec. 30, 2025) (describing the NSA). "The NSA achieves this by, *inter alia*, relieving patients from financial liability for surprise bills and creating an . . . IDR process for billing disputes between providers and insurers." *Guardian*, 140 F.4th at 273 (citing 42 U.S.C. § 300gg-111(c)(1)–(5)). Under the IDR process, "the provider and insurer first try to agree on a price for the services." *Id.* (citing 42 U.S.C. § 300gg-111(c)(1)(A)). If the negotiation fails, the provider or payor may initiate IDR proceedings before a certified IDR entity selected by either the parties or the Department of Health and Human Services (HHS). *Id.* (citing 42 U.S.C § 300gg-111(c)(1)(B) and 42 U.S.C § 300gg-111(c)(4)). The IDR entity determines the amount the payor owes the provider. *Id.* (citing 42 U.S.C. § 300gg-111(c)(5)). In the "absence of a fraudulent claim or evidence of a misrepresentation of facts" to the IDR entity, the IDR award "shall be binding upon the parties involved," and payment of the award "shall be made . . . not later than 30 days after the date on which such determination is made." *Id.* at 274 (citing 42 U.S.C. § 300gg-112(b)(5)(D)).

The NSA also provides that an IDR award "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act (FAA). *Id.* (quoting 42 U.S.C. §§ 300gg-112(b)(5)(D), 300gg-111(c)(5)(E)). Those provisions authorize a court to vacate an arbitral award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

2

*Id.* at 275 n.2 (citing 9 U.S.C. § 10(a)(1)–(4)). "HHS has the authority to enforce provider and payor non-compliance with the NSA's provisions." *Id.* at 274 (citing 42 U.S.C. § 300gg-22(b)(2)(A) (providing for HHS enforcement against some payors for NSA non-compliance); 42 U.S.C. § 300gg-134(b) (providing for HHS enforcement against providers for NSA non-compliance)).

Plaintiffs initiated multiple IDR processes under the NSA to resolve their payment disputes with Meritain. (D.I. 15 ¶ 18). After Plaintiffs obtained various IDR awards, however, they assert that "Meritain has consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $240,244 in unpaid and past due claims." (*Id.* ¶¶ 18—20). Accordingly, on January 3, 2025, Plaintiffs sued Meritain in the Court of Chancery of the State of Delaware. (D.I. 1-1, Ex. A, *SpecialtyCare Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC v. Meritain, Health, Inc.*, C.A. No. 2025-0013-JTL). On February 18, 2025, Meritain filed a Notice of Removal to this Court. (D.I. 1). On April 1, 2025, Meritain filed an Answer with Affirmative Defenses. (D.I. 6). The Court entered a Scheduling Order on May 27, 2025. (D.I. 11). On June 23, 2025, by agreement of the parties (D.I. 14), Plaintiffs filed a First Amended Complaint. (D.I. 15).

The First Amended Complaint contains two counts to confirm Plaintiffs' IDR awards under the Delaware Revised Uniform Arbitration Act, 10 *Del. C.* § 5702(c) (Count I) and Section 9 of the FAA, 9 U.S.C. § 9, (Count II). (*Id.*) In addition, the First Amended Complaint contains state law causes of action for account stated (Count III), quantum meruit (Count IV), and unjust enrichment (Count V). (*Id.*). Meritain moves to dismiss Plaintiffs' First Amended Complaint for failure to state a claim (D.I. 19) and seeks to stay this action pending resolution of the motion to dismiss (D.I. 25).

## II.    LEGAL STANDARD

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III.    DISCUSSION

Meritain seeks dismissal on three grounds. First, Meritain contends that Plaintiffs' claims are barred because the NSA contains no private right of action. Second, Meritain contends that Plaintiffs' may not assert state law claims to circumvent the absence of a private right of action in the NSA. Last, Meritain contends that Plaintiffs' state law claims fail as a matter of Delaware law.

### A. Whether the NSA Creates a Private Right of Action

Meritain argues that the NSA creates neither an express nor an implied private right of action (D.I. 20 at 10–14), while Plaintiffs maintain that the NSA permits judicial enforcement of IDR awards (D.I. 27 at 3–9).[1] I agree with Meritain.

Although the Court of Appeals for the Third Circuit has not yet opined on this issue, nearly every court that has considered it—including the Court of Appeals for the Fifth Circuit and multiple district courts within the Third Circuit—has favored Meritain's view and declined to find that the NSA creates either an express or implied private right of action. *See, e.g., Guardian Flight, L.L.C. v. Health Care Serv. Corp.,* 140 F.4th 271, 277 (5th Cir. 2025) ("The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action."); *Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of New Jersey,* No. 25-12526 (WJM), 2025 WL 3514300, at *5 (D.N.J. Dec. 8, 2025) (noting "substantial majority of federal court decisions across the country that have examined this issue and declined to recognize an implied right of action under the NSA") (internal citation and quotation marks omitted); *SpecialtyCare Inc. v. Aetna, Inc.,* No. 25-224, 2025 WL 3719227, at *1 (M.D. Pa. Dec. 23, 2025) (no private right of action under NSA); *Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of New Jersey,* No. 25-12032 (SRC), 2025 WL 3470569, at *4 (D.N.J. Dec. 3, 2025) (same); *Mod. Orthopaedics of NJ v. Premera Blue Cross,* No. 25-01087 (BRM) (JSA), 2025 WL 3063648, at *3 (D.N.J. Nov. 3, 2025) (same), *accord T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n,* No. 25-1255 (CS), 2025 WL 3496382, at *3 (S.D.N.Y. Dec. 5, 2025) (same);

---

[1]    The NSA provides that an IDR award is automatically "binding upon the parties involved" and thus "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" FAA. 42 U.S.C. §§ 300gg-112(b)(5)(D), 300gg-111(c)(5)(E). Meritain contends, and Plaintiffs do not dispute, that this case does not fall within any of the statutory exceptions. (D.I. 20 at 12).

5

*Worldwide Aircraft Servs., Inc. v. United Healthcare*, No. 24-2527-TPB-LSG, 2025 WL 3312169, at *2 (M.D. Fla. Nov. 28, 2025) (same); *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-1686 (PAE), 2025 WL 2371537, at *17 (S.D.N.Y. Aug. 14, 2025) ("The statutory text [of the NSA] thus forecloses of a private right of action to enforce IDR determinations."); *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 790 F. Supp. 3d 129, 137 (E.D.N.Y. 2025) ("[B]y seeking confirmation here, Plaintiff asks the Court to impermissibly invent a cause of action to confirm an award under the NSA. It may not do so.").[2]

The only court to have held otherwise—the District of Connecticut in *Guardian Flight LLC v. Aetna Life Ins. Co.*—stands alone. 789 F. Supp. 3d 214, 229 (D. Conn. 2025). Plaintiffs nevertheless urge me to adopt *Aetna Life*, claiming that in one other case in the Third Circuit—*GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*—the court applied a similar approach as in *Guardian Flight*, pre-*Guardian Flight*. (D.I. 27 at 5–8). The *GPS* court, however, did not substantively analyze the broader applicability of the FAA to the NSA. *GPS*, No. 22-6614 (KM) (JBC), 2023 WL 5815821, at *2 (D.N.J. Sept. 8, 2023). And other courts that have considered *GPS* have noted both its distinguishing procedural features and that the *GPS* court "simply had no need to grapple with the broader applicability of the FAA to the NSA." *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1084 (M.D. Fla. 2023), *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110 (11th Cir. 2025); *see also T.V. Seshan M.D*, 2025 WL 3496382, at *6 ("[T]he procedural posture of *GPS* . . . is different from this case. In *GPS*, the court confirmed an IDR award after denying a petition to

---

[2]    The Supreme Court recently denied a petition for certiorari to review the Fifth Circuit's decision. No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026).

vacate the award. The Court found that judicial review of the award was permitted in that instance because review was requested pursuant to FAA § 10(a), which was incorporated into the NSA. Although the court briefly noted that the NSA's language that awards are to be 'final and binding' implicitly gives federal courts authority to confirm awards and compel compliance, the *GPS* court did not grapple with any of the other arguments raised here as to why § 9 is inapplicable.") (internal citations omitted); *Reiter*, 2025 WL 3514300, at *5 ("In *GPS* . . . the court concluded that because § 9 language (an award 'must' be confirmed absent vacatur, modification, or correction) implicitly permits courts to compel compliance, likewise, the 'final and binding' language of NSA gives court authority to confirm IDR award. However, the FAA makes the *confirmation* of arbitration awards (except in limited circumstances) mandatory; in contrast, the NSA makes the IDR *determinations* binding, not the confirmation of those awards."). Accordingly, *GPS* does not overcome the overwhelming weight of authority rejecting *Aetna Life*.

In sum, I join the majority in finding the NSA does not create a private right of action for the reasons articulated in the Fifth Circuit's decision in *Guardian Flight*. Accordingly, I recommend dismissing Counts I and II of Plaintiffs' First Amended Complaint.

## B. Whether the NSA Bars Plaintiffs' State Common Law Claims

Meritain argues that Plaintiffs may not "'use state common law to circumvent the absence of a private right of action' under a federal statute," citing *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59 (3d Cir. 2008) and *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110 (2011). (D.I. 20 at 15). Plaintiffs characterize *Umland* and *Astra* as "wholly irrelevant." (D.I. 27 at 9–10). I agree with Meritain.

I begin with *Umland*. There, the Third Circuit dismissed an employee-plaintiff's state law breach of contract claims on two grounds. As to those claims that accrued during the 2000–2003

time period regarding being improperly classified as an independent contractor, the court determined that the state law claims were preempted by IRS regulations because their application would interfere with the IRS's administrative scheme for resolving such disputes. *Umland*, 352 F.3d at 65. With respect to the later claims that accrued after the plaintiff's reclassification as an employee, in 2004–2005, however, plaintiff brought two breach of contract actions under the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3111. *Id.* With respect to these claims, the Third Circuit did not engage in a preemption analysis, but rather determined that FICA does not create a private right of action. *Id.* at 67.

The court reasoned: "[I]f we were to read FICA's provisions into every employment contract, we would contradict Congress's decision not to include expressly a private right of action and our belief that Congress did not intend to imply a private right of action either." *Id.* Noting that plaintiff's breach of contract claim "at root allege[s] FICA violations," the court affirmed the district court's dismissal of the breach of contact claim.[3] *Id.*

Turning to *Astra*, the Supreme Court rejected medical facility plaintiffs' attempt to assert a breach of contract claim against pharmaceutical manufacturer defendants for breach of a Pharmaceutical Pricing Agreement (PPA) between the defendants and HHS when the PPA incorporated the requirements of Section 340B of the Public Health Services Act, and Section 340B itself did not provide a private right of action. *Astra*, 563 U.S. at 113. Plaintiffs alleged that defendants were unlawfully overcharging their health care facilities in violation of the PPA and sought to enforce it as third-party beneficiaries. *Id.* Specifically, plaintiffs' complaint alleged "the

---

[3]     The plaintiff also alleged an unjust enrichment claim, in which plaintiff claimed that defendant unjustly enriched itself by wrongfully withholding from plaintiff more than defendant owed in employee FICA taxes. *Id.* at 67–69. The Third Circuit held that the unjust enrichment claim was preempted by 26 U.S.C. § 7422(a) which restricts tax-refund lawsuits. *Id.*

manufacturers charged more than the § 340B ceiling price, not that they violated any independent substantive obligation arising only from the PPAs" and acknowledged that "§ 340B is the source of the contractual term allegedly breached." *Id.* at 118–19. But the Supreme Court rejected plaintiffs' attempt to assert a breach of contract claim that was "in substance one and the same" as a suit to enforce Section 340B directly. *Id.* at 114. Recognizing that "any private right of action for violating a federal statute . . . must ultimately rest on congressional intent to provide a private remedy," *Id.* at 117, (citation omitted), the Supreme Court explained:

> A third-party suit to enforce [the contract] . . . is in essence a suit to enforce the statute itself. The absence of a private right to enforce the statutory ceiling-price obligations would be rendered meaningless if [drug purchasers] could overcome that obstacle by suing to enforce the contract's ceiling-price obligations instead. The statutory and contractual obligations, in short, are one and the same.

*Id.* at 118. The Supreme Court further explained that the absence of a private right of action to enforce the statute "would be rendered meaningless" if a plaintiff could simply sue to enforce the contract instead. *Id.*

    *Umland* and *Astra* illustrate why Plaintiffs' state law claims are foreclosed, as they are presented here. The gravamen of Plaintiffs' First Amended Complaint, and their sole theory of wrongdoing, is that Meritain has failed to pay $240,244 in IDR awards to Plaintiffs in violation of the NSA. (D.I. 15).[4] Their state law claims are "one and the same" as their claims under the FAA

---

[4]    Plaintiffs aver that "Meritain is violating the No Surprises Act . . . and engaging in bad faith claims settlement practices" (D.I. 15 ¶ 1), that "[t]he IDR awards at issue were rendered in accordance with the NSA, and are, therefore, binding upon SpecialtyCare and Meritain" (*Id.* ¶ 19), and that "Meritain knows that it is statutorily required to pay IDR awards within thirty days" but that it has not invested "in the compliance systems and personnel needed to meet their obligations under federal law" because it "profit[s] from lack of compliance and violation of the mandatory payment obligations." (*Id.* ¶ 30). These paragraphs were incorporated in each of Plaintiffs' claims. (*Id.* ¶¶ 32, 40, 46, 58, 72). Plaintiffs further plead as part of their quantum meruit and unjust

and Delaware Revised Uniform Arbitration Act to enforce the IDR awards. *Astra*, 563 U.S. at

114, 118; *Umland*, 542 F.3d at 67 (dismissing state law claim that "at root" alleged violation of

federal statute). Plaintiffs do not allege that Meritain violated any substantive obligation that arises

independent of the NSA. *Astra*, 563 U.S. at 113. Although account stated, quantum meruit, and

unjust enrichment require proof of certain elements specific to those claims, "the ultimate goal of

the plaintiffs' claim here is to enforce the federal statute." *Bauer v. Elrich*, 8 F.4th 291, 300, 300

n.6 (4th Cir. 2021) (citing *Astra* to bar state law claim that effectively sought enforcement of

federal statute that lacked private right of action). And if Plaintiffs were permitted to do so, "state

common law would govern whether and how a federal statute may be enforced, irrespective of

Congressional intent." *Id.* at 299.

Plaintiffs' attempts to distinguish *Astra* and *Umland* do not carry the day. As for *Astra*,

Plaintiffs argue that while Section 340B of the Public Health Service Act provided for "exclusive

federal enforcement," the NSA does not. (D.I. 27 at 10). But the Fifth Circuit in *Guardian Flight*

reasoned that Congress intended the NSA's administrative remedies to be exclusive:

> The NSA expressly bars judicial review of IDR awards except as to
> the specific provisions borrowed from the FAA . . . Congress could
> have done otherwise. Section 9 of the FAA empowers courts to
> confirm or enforce arbitration awards, see 9 U.S.C. § 9, but
> Congress chose not to incorporate § 9 into the NSA. It incorporated
> only parts of § 10. . . . Instead, Congress took a different tack: it
> empowered HHS to assess penalties against insurers for failure to
> comply with the NSA. *See* 42 U.S.C. § 300gg-22(b)(2)(A); 45
> C.F.R. § 150.301 *et seq*. The Centers for Medicare and Medicaid

---

enrichment claims that, "[t]he dispute over the value of the benefits received was resolved in
accordance with the IDR procedures set forth in the NSA," that "Meritain was obligated to make
payment within 30 days of the IDR awards being issued," but has "has failed and refused to pay
the amounts owed on the IDR awards within thirty days as required by the NSA." (*Id.* ¶¶ 67–68,
81–82). And in their Prayer for Relief, Plaintiffs seek, "[a]n Order enforcing all the IDR Awards
not paid within thirty days as required by federal law in an amount not less than $240,244" and
"[e]quitable relief requiring Meritain comply with the NSA by paying all future IDR awards within
30 days." (*Id.* at 16).

> Services (CMS), an agency within HHS, has acted on that authority
> by soliciting provider complaints and compelling payors to pay IDR
> awards where appropriate. CMS maintains an online portal through
> which providers may submit complaints regarding the IDR process.
> *See* No Surprises Complaint Form, CMS, https://perma.cc/HHD2-
> 8HW7. The inference from the NSA's broader structure, then, is
> plain. The "express provision of one method of enforcing a
> substantive rule suggests that Congress intended to preclude others."
> *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *Sigmon*, 110 F.3d
> at 1206 (holding the "existence of [an] administrative scheme of
> enforcement is strong evidence that Congress intended the
> administrative remedy to be exclusive" (quotations omitted)). The
> NSA's structure conveys Congress's policy choice to enforce the
> statute through administrative penalties, not a private right of action.

*Guardian Flight*, 140 F.4th at 277.

Plaintiffs attempt to distinguish *Umland* because it "involved an express preemption clause in the Internal Revenue Code and a sweeping federal tax scheme," neither of which exist here. True, but Plaintiffs ignore that preemption was only part of the court's analysis—the remainder of the claims were assessed, as here, on whether a private right of action exists. In addition to *Umland* and *Astra*, other courts have dismissed state law claims on non-preemption grounds when those claims sought to enforce a federal statute with no private right of action. *See Mankodi v. Trump Marina Assocs., LLC*, 525 F. App'x 161, 166 (3d Cir. 2013) (dismissing breach of contract claim because "it attempts to assert a claim based on a violation of the CCA, which does not provide a private right of action" and although plaintiff "attempts to frame this claim as a common law breach of contract . . . , his complaint evidences that he is really alleging a violation of the CCA"); *Bauer*, 8 F.4th at 299 ("The essence of the plaintiffs' claim, and their sole theory of wrongdoing, is that the County defendants' implementation of the EARP violated Section 1621, which does not authorize private enforcement. The plaintiffs cannot use the procedural mechanism of Maryland taxpayer standing to bring a claim that is 'one and the same' as a purported enforcement action brought directly under Section 1621.") (citing *Astra*, 563 U.S. at 114, 118); *Acevado v. Citibank*,

11

*N.A.*, No. 10-8030 PGG, 2012 WL 996902, at *10 (S.D.N.Y. Mar. 23, 2012) ("Because Plaintiffs' breach of contract claim relies entirely on incorporating the requirements of a statute with no private right of action [for damages] . . . Plaintiffs' claim . . . is precisely the form of 'artful pleading' . . . that state courts have identified as making an impermissible end run around statutes with no private right of action.") (internal quotation marks and citation omitted); *cf. Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 228 (4th Cir. 2025) (permitting state unfair competition claim to proceed when premised in part on federal statute that lacked private right of action, reasoning that "it is acceptable to use a violation of a federal statute as evidence supporting a state law claim—but not to advance a state claim that is merely a shell for an otherwise-unavailable federal claim").

I do not reach the question as to whether Plaintiffs' state law claims are preempted.[5] Under *Guardian Flight*, *Umland*, and *Astra*, I conclude that Plaintiffs may not circumvent Congress's

---

[5]    Meritain references preemption only in a cursory footnote in its Opening Brief (D.I. 20 at 15 n.5), does not address which type of preemption allegedly applies, and sidesteps discussing the doctrine in its Reply Brief (D.I. 29 at 7, "The Court need not engage with Plaintiffs' lengthy preemption analysis because their state claims are barred for a simpler reason: Plaintiffs cannot use state law to 'recover for violations of a federal statute that creates no private cause of action and, in fact, expressly restricts its enforcement to the federal government.'" (citation omitted)). Thus, I am not persuaded that Meritain has actually placed preemption before the Court. Such passing references as Meritain makes here suggest the argument has been forfeited. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (explaining that party forfeited argument when it "makes only a passing reference to the [statute] in her opening brief and mentions it only once in her reply brief"); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 18-462 (MN), 2020 WL 1443215, at *5 (D. Del. Mar. 24, 2020) (collecting cases disfavoring arguments made in footnotes). Even if not forfeited, Meritain has not met its burden at this stage to establish preemption given the lack of meaningful analysis. *See Insolvency Servs. Grp., Inc. v. Comcast Cable Commc'ns, LLC*, No. 20-1499-LPS, 2021 WL 4477000, at *2 (D. Del. Sept. 30, 2021) ("As a threshold matter, preemption is an affirmative defense that Defendant bears the burden to prove. To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense, . . . a defendant must show that the defense is apparent on the face of the complaint.") (internal quotation marks omitted). Accordingly, I do not reach preemption.

omission of a private right of action in the NSA by seeking to enforce a federal right under a state

law theory. *Astra*, 563 U.S. at 113-14.

Accordingly, I recommend dismissing Counts III, IV, and V of Plaintiffs' First Amended

Complaint.[6]

### C. Whether Plaintiffs Have Stated Claims Under Delaware Law

Meritain contends that Plaintiffs' state law claims fail as a matter of Delaware law. (D.I.

20 at 16-17). Because I recommend dismissing Plaintiffs' account stated, quantum meruit, and

---

[6]      In response to Meritain's position that Plaintiffs' state law claims are barred, Plaintiffs
confine their response to distinguishing Meritain's cited authority and arguing that the state law
claims are not preempted. (D.I. 27 at 9–12). For completeness, however, I nevertheless note two
recent decisions not cited by either party that are helpful to understand why Plaintiffs' state law
claims to enforce IDR awards are barred—*Kennedy v. UnitedHealth Grp. Inc.* from the Southern
District of New York and *Mod. Orthopaedics of NJ v. Premera Blue Cross* from the District of
New Jersey. In *Kennedy v. UnitedHealth Grp. Inc.*, the Southern District of New York analyzed
whether state law claims for breach of contract and unjust enrichment between a provider and an
insurer embedded federal issues so as to give rise to federal question jurisdiction. No. 25-432
(PAE), 2025 WL 1725147, at *8 (S.D.N.Y. June 20, 2025). The provider plaintiff asserted that
the insurer defendant unlawfully denied the provider compensation for certain emergency medical
services he had rendered to members of the defendant's health plans. *Id.* at *1. Critically, the
plaintiff chose to bring state law claims *rather than* seek redress under the IDR process or the
NSA. In declining to exercise subject matter jurisdiction, the court rejected the defendant's
argument that the NSA "supplant[ed] state-law remedies for medical providers," noting that
defendant "has not identified any authority holding that the NSA bars medical providers from
bringing state-law claims against the patient's insurer." *Id.* Similarly, in *Mod. Orthopaedics of
NJ v. Premera Blue Cross*, the District of New Jersey in the context of preemption rejected the
plaintiff's argument that the NSA *requires* providers to "avail itself of the NSA's IDR process and
procedures to secure payment." No. 25-01087 (BRM) (JSA), 2025 WL 3063648, at *11 (D.N.J.
Nov. 3, 2025). *Id.* at *12. Relying on *Kennedy*, the court explained that, "[t]he IDR is an opt-in
process, it provides an *alternative*, streamlined route to determine the amount owed between the
parties—it does not displace traditional state-law remedies like unjust enrichment." (emphasis
added). I do not read *Kennedy* and *Mod. Orthopaedics* as greenlighting Plaintiffs' state law claims.
Rather, unlike the plaintiff in *Kennedy*, Plaintiffs here do not seek redress under state law
untethered from any IDR awards obtained under the NSA. Instead, Plaintiffs' First Amended
Complaint wields state law claims to obtain payment of the IDR awards themselves. This is an
impermissible use of state law to enforce a federal statute that lacks a private right of action.

unjust enrichment claims for other reasons, I do not reach the question as to whether these claims have been sufficiently plead under Delaware law.

## IV.    CONCLUSION

For the reasons set forth above, I recommend granting Meritain's motion to dismiss. Because I recommend dismissing Meritain's First Amended Complaint, I recommend denying as moot Meritain's motion to stay.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 9, 2026

Laura D. Hatcher
United States Magistrate Judge